IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GENESIS ARMSTRONG, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| | ) Case No.: |
| V. | ) |
| | ) JURY TRIAL DEMANDED |
| MOBILE COUNTY SCHOOL BOARD, | ) |
| | ) |
| | ) |
| DEFENDANT(S). | ) |

## COMPLAINT

### JURISDICTION

1. The plaintiff brings this action for injunctive relief and damages under 28 U.S.C. §§ 1331, 1343(4). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2. This is a suit authorized and instituted under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA).

3. This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991," 42 U.S.C. § 2000e, et seq. (Title VII), and the Pregnant Workers Fairness Act.

4. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). The plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

**PARTIES**

5. Plaintiff, Genesis Armstrong, ("Plaintiff" or "Armstrong"), is over the age of nineteen (19) years old and is a resident of Mobile, County, Alabama, and performed work for the Defendant in the counties composing the during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Division.

6. Defendant Mobile County School Board ("Defendant") is a governmental entity operating public schools in Mobile County, Alabama and is subject to service of process in Alabama.

7. During all times relevant hereto, Defendant has employed at least three-hundred (300) or more employees for the requisite duration under the Title VII. Defendant is therefore covered under Title VII in accordance with 42 U.S.C. Section 2000e(b).

**FACTS**

8. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

9. Plaintiff worked for Defendant as a teacher and, most recently, was rehired with an effective start date of August 1, 2024, as a grade 3 teacher at Ella Grant Elementary School.

10. At the time of hire and during her employment, Plaintiff was pregnant and experienced health issues, including Irritable Bowel Syndrome ("IBS"), which can be episodic and impact major bodily functions, including digestive and bowel function.

11. Mrs. Armstrong was diagnosed with IBS in January 2024.

12. Because of her disability, Mrs. Armstrong's pregnancy was considered high-risk by her medical doctors.

13. However, Mrs. Armstrong was able to perform the essential functions of her job.

14. At the time Mrs. Armstrong was hired, she communicated to Principal Tiffani Flott Wells ("Principal Wells") that she was pregnant and suffered from chronic IBS.

15. Plaintiff sought to manage her pregnancy-related medical care and her health by scheduling medical appointments near the end of the school day and minimizing instructional disruption, including appointments scheduled at or around 3:00 p.m.

16. Because of her disability and pregnancy, Mrs. Armstrong's flare-ups increased and made her pregnancy symptoms worse in the first trimester.

17. Eventually, Principal Wells emailed all employees, stating that if they needed to leave before 2:50 p.m., it would be counted as half a day's absence, regardless.

18. Another pregnant employee and I were the only employees having routine appointments at the end of the day.

19. Mrs. Armstrong believed that Defendant's application of attendance or leave practices made it more difficult for pregnant and sick employees to attend medically necessary appointments, including by treating departures before a particular time as a "half day" absence, even when routine OB appointments were later in the afternoon.

20. Mrs. Armstrong emailed Principal Wells one day to let her know she was feeling extremely dizzy, but she never responded.

21. On another day, Mrs. Armstrong told Principal Wells that she needed to sit down during dismissals because of dizzy spells and nausea caused by pregnancy.

22. In response, Principal Wells emailed the entire staff, stating that everyone needed to be standing during dismissals; she never responded to Mrs. Armstrong directly.

23. In September, Mrs. Armstrong attempted to use a personal day, but Principal Wells canceled only Mrs. Armstrong's although the handbooks state employees are entitled to personal days.

24. Principal Wells also withheld necessary resources like math and reading homework packets for the quarter from Mrs. Armstrong but extended the resources to teachers who were not pregnant.

25. On or about October 8, 2024, Mrs. Armstrong attempted to make an anonymous inquiry with Human Resources, but they gave her another number to contact, which was unsuccessful.

26. Mrs. Armstrong contacted HR again, and Katherine LNU provided her with information to email HR after insisting that she give them her name and the school she taught at.

27. On or about October 9, 2024, Mrs. Armstrong emailed Principal Wells and Human Resources stating that Principal Wells discriminated against her because of her pregnancy and disability.

28. On or about October 14, 2024, Mrs. Armstrong received an email from HR stating she would need to bring representation for a mandatory meeting because she would possibly receive some form of disciplinary action.

29. Mrs. Armstrong requested that Union representative, Dr. Eric Beck, join her.

30. On or about October 21, 2024, Mrs. Armstrong attended the mandatory meeting along with Executive Manager of Human Resources, Brian Hack, and Dr. Beck.

31. Mr. Hack told Mrs. Armstrong that he recommended that she be terminated because she missed 16 days of school.

32. In addition to the recommendation pending board approval, she was placed on administrative leave.

33. Mr. Hack also gave Mrs. Armstrong the option to resign, claiming he wanted to prolong her benefits because a termination would not look good on her record.

34. Mr. Hack told Mrs. Armstrong that if she did not resign, he would proceed with the termination recommendation.

35. During her employment at Ella Grant, Miss Armstrong missed 14 days, and for each day she missed, she provided a doctor's note.

36. The times she missed were all related to routine OB visits, sickness and health issues due to pregnancy, or flare-ups due to her disability.

37. Principal Wells also treated pregnant 3rd-grade teacher Briana Archie the same way.

38.	Mrs. Archie missed as many days as Mrs. Armstrong, but Defendant did not terminate her because she did not file a grievance with HR, specifically claiming discrimination because of her pregnancy and disability.

39.	Before the above-mentioned incident, Mrs. Armstrong had never been written up or received any disciplinary actions while working with MCPSS.

40.	Mrs. Armstrong's performance reviews were great.

41.	AR reading coach, Naomi Franklin, told Mrs. Armstrong she overheard Principal Wells making a bet with office staff that the pregnant teachers would not be coming in on an unknown day.

42.	Principal Wells also told Mrs. Franklin, "When I was pregnant, I had to come into work. I couldn't take all those days off. I don't understand why they need to take all those days off just because they are sick lastly."

43.	Principal Wells told Mrs. Franklin, "This is all her [Mrs. Armstrong] fault this has happened because she decided to go to HR."

44.	On or about December 17, Mrs. Armstrong filed her charge with the EEOC.

45.	On or about December 18, 2024, Defendant terminated Plaintiff's employment.

46.	Mrs. Armstrong was told that MCPSS was willing to withdraw her termination if she did not go through the EEOC process.

47. Mrs. Armstrong contends Defendant's stated reasons were pretextual and that Defendant terminated Mrs. Armstrong because of disability and/or pregnancy-related medical needs and in retaliation for her complaints and opposition to discriminatory practices.

## COUNT I – ADA FAILURE TO ACCOMMODATE

48. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

49. Plaintiff suffers from a physical impairment, IBS, which when active substantially limits one or more major life activities, including digestive and bowel functions.

50. Plaintiff requested reasonable accommodation(s) related to her medical conditions, including flexibility and non-discriminatory treatment of medically necessary appointments near the end of the workday and related attendance or leave treatment.

51. Plaintiff was able to perform the essential functions of her job with reasonable accommodation.

52. Defendant failed to provide reasonable accommodations and failed to engage in the interactive process required by the ADA.

53. Because of Defendant's violation of the ADA, Plaintiff has been damaged, including loss of pay, benefits, and mental anguish.

## COUNT II – ADA DISCRIMINATION - TERMINATION

54. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

55. Plaintiff is an individual with a disability within the meaning of the ADA.

56. Plaintiff was qualified for her position and performed her job in a satisfactory manner.

57. Defendant terminated Plaintiff's employment on or about December 18, 2024.

58. Plaintiff contends Defendant terminated her because of her disability and/or because of disability-related medical needs and absences.

59. Because of Defendant's violation of the ADA, Plaintiff has been damaged, including loss of pay, benefits, and mental anguish.

## COUNT III – ADA RETALIATION

60. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

61. Plaintiff engaged in protected activity by requesting accommodation and opposing what she reasonably believed to be disability-related discrimination and retaliatory attendance/leave practices.

62. Defendant subjected Plaintiff to adverse action, including termination on or about December 18, 2024.

63. Defendant's adverse actions were causally connected to Plaintiff's protected activity.

64. Because of Defendant's retaliation, Plaintiff has been damaged, including loss of pay, benefits, and mental anguish.

## COUNT IV – TITLE VII - PREGNANCY DISCRIMINATION

65. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

66. Plaintiff is a female employee and was pregnant during her employment with Defendant.

67. Plaintiff was qualified for her position.

68. Defendant treated Plaintiff less favorably because of pregnancy, childbirth, or related medical conditions, including through adverse attendance or leave practices and discipline threats impacting pregnant employees' medically necessary appointments.

69. Defendant terminated Plaintiff's employment on or about December 18, 2024.

70. Plaintiff contends Defendant's termination decision was motivated, in whole or in part, by Plaintiff's pregnancy and related medical conditions and needs.

71. Because of Defendant's violation of Title VII, Plaintiff has been damaged, including loss of pay, benefits, and mental anguish.

## COUNT V – TITLE VII RETALIATION

72. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

73. Plaintiff engaged in protected activity when she complained that she would not be discriminated against because of her health and pregnancy and opposed practices she reasonably believed were discriminatory and retaliatory, including by raising concerns to HR.

74. Defendant took materially adverse action against Plaintiff, including termination on or about December 18, 2024.

75. Defendant's adverse action was causally connected to Plaintiff's protected activity.

76. Because of Defendant's retaliation, Plaintiff has been damaged, including loss of pay, benefits, and mental anguish.

**PRAYER FOR RELIEF**

    **WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the Americans with Disabilities Act;

B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

C. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position they would have had, had they not been terminated;

D. Award them back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

E. Award reasonable attorneys' fees and costs

F. Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

G. Any different or additional relief as determined by the Court to which Plaintiff is entitled.

**JURY TRIAL DEMANDED**

*/s/ Porcha Anthony Davis*
Porcha Anthony Davis
ASB 1914P47D

The Workers' Firm LLC
2 20th St. North Suite 900
Birmingham, AL 35203
T: 205.564.9005 F: 205.564.9006
porcha@theworkersfirm.com

*Attorney for Plaintiff*

## PLEASE SERVE DEFENDANT AS FOLLOWS

**Mobile County School Board**

**c/o Dr. Chresal D. Threadgill, Superintendent of Education**

**1 Magnum Pass**

**Mobile, AL 36618**